UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LAVONDA KAY YOUNG,

    Plaintiff,

v.   Case No.: 3:22-cv-307-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## OPINION AND ORDER

Plaintiff Lavonda Kay Young seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits and for supplemental security income benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their respective positions. As explained below, the decision of the Commissioner is **AFFIRMED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A. Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment,

then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### C.     Procedural History

Plaintiff filed an application for a period of disability and disability insurance and for supplemental security income on March 27, 2018, alleging disability beginning on August 22, 2017. (Tr. 138, 139,326-40). Plaintiff later amended the onset date to May 1, 2018. (Tr. 353). The applications were denied initially and on reconsideration. (Tr. 138, 139, 163, 164). Plaintiff requested a hearing, and on April 3, 2020 and May 26, 2021, hearings were held before Administrative Law Judge William Greer ("ALJ"). (Tr. 62-93). On July 9, 2021, the ALJ entered a decision finding Plaintiff not under a disability from May 1, 2018, through the date of the decision. (Tr. 24-54).

Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on January 26, 2022. (Tr. 1-5). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on March 17, 2022, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 14).

### D.     Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through June 30, 2018. (Tr. 26). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 1, 2018, the alleged onset date. (Tr. 27). At step two, the ALJ

found that Plaintiff had the following severe impairments: "a lumbar spine disorder and an anxiety disorder." (Tr. 27). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Tr. 27).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 [C.F.R. §§] 404.1567(a) and 416.967(a) except she can sit up to 6 hours a day, up to 2 hours at one time; stand up to 2 hours per day, up to 1 hour at one time; walk up to 1 hour per day, up to 30 minutes at one time; lift up to 10 pounds frequently and 20 occasionally; occasionally use foot controls; frequently handle, finger, and reach with the right upper extremity; occasionally push/pull with the right upper extremity; occasionally bend, stoop, crawl, crouch, kneel, and balance; occasionally climb stairs, but never climb ladders, ropes, or scaffolds; no work around unprotected heights or moving and hazardous machinery; no concentrated or excessive exposure to extremes in temperature or humidity; and work must be simple, unskilled, and repetitive.

(Tr. 30).

At step four, the ALJ determined that Plaintiff was incapable of performing her past relevant work as a cashier II, cleaner–commercial or institutional, and management trainee. (Tr. 52). At step five, the ALJ found that considering Plaintiff's

age (43 years old on the alleged disability onset date), education (at least high school), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 53-54). Specifically, the vocational expert testified that a person with Plaintiff's limitations could perform such occupations as:

    (1)   final assembler, DOT 713.687-018,[1] sedentary, SVP 2

    (2)   addresser, DOT 209.587-010, sedentary, SVP 2

    (3)   lens inserter, DOT 713.687-026, sedentary, SVP 2

(Tr. 54). The ALJ concluded that Plaintiff had not been under a disability from May 1, 2018, through the date of the decision. (Tr. 54).

## II.   Analysis

On appeal, Plaintiff raises two issues:

    (1)   whether the ALJ's RFC determination was unsupported by substantial evidence because he failed to properly evaluate the opinion evidence; and

    (2)   whether the ALJ failed to incorporate Plaintiff's need for an assistive device into the RFC.

(Doc. 18, p. 12, 22).

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

## A. Evaluation of Opinion Evidence

Plaintiff argues the ALJ failed to properly consider the medical opinions of Oscar B. DePaz, M.D. and Wilda Murphy, M.D. (Doc. 18, p. 13-14, 18). The same legal authority applies to both of these opinions.

The regulations for disability cases filed after March 27, 2017 – such as this one – changed and an ALJ no longer defers or gives any specific evidentiary weight to a medical opinion. 20 C.F.R. § 404.1520c(a), 20 C.F.R. § 416.920c(a). Thus, an ALJ no longer uses the term "treating source" and does not defer or give specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-ORL-PDB, 2020 WL 5810273, at *2 (M.D. Fla. Sept. 30, 2020) (citing 20 C.F.R. § 404.1520c(a)).

Instead, an ALJ assesses the persuasiveness of a medical source's opinions given the following five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(a)-(c); 20 C.F.R. § 416.920c(a)-(c). An ALJ may but is not required to explain how he considers factors other than supportability and

consistency, unless two or more opinions are equally persuasive on the same issue. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2).

For supportability, the revised rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1). For consistency, the revised rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

The new regulations also differentiate between medical opinions and "other medical evidence." 20 C.F.R. §§ 404.1513(a)(2)-(3), 416.913(a)(2)-(3). "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities listed in paragraphs (a)(2)(i) through (iv). 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history,

clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).

### 1. Dr. DePaz's Opinion

Plaintiff argues that the ALJ did not provide legitimate reasons to find Dr. DePaz's opinion unpersuasive. (Doc. 18, p. 15). Plaintiff contends that the ALJ erred in finding Dr. DePaz's opinions were inconsistent with each other, were unsupported by his treatment notes, and were inconsistent with other evidence of record.

Dr. DePaz treated Plaintiff for pain management from July 2018 through at least July 2020. (Tr. 798, 989). The ALJ thoroughly summarized Dr. DePaz's treatment records for the entire period of treatment. (Tr. 31-32, 34-42). In the decision, the ALJ also thoroughly summarized a July 31, 2019 and an August 8, 2020, Residual Functional Capacity Questionnaire completed by Dr. DePaz:

> On July 31, 2019, Dr. DePaz completed a Residual Functional Capacity Questionnaire at the request of the claimant's representative in which he stated that he last evaluated the claimant that same day (Exhibit B13F). He opined that the claimant's symptoms were frequently severe enough to interfere with the attention and concentration required to perform simple work-related tasks. Dr. DePaz opined that she would need to recline or lie down during a hypothetical eight-hour workday in excess of the typical 15-minute break in the morning, the 30-60 minute break for lunch, and the typical 15-minute break in the afternoon. Dr. DePaz further opined that the claimant could walk 1-2 city blocks without rest or significant pain; sit for 30 minutes at one time and for 6 hours total in an 8-hour workday; and stand/walk for 10 minutes at one time and for 2 hours total in an eight-hour workday. He opined that the claimant would need a job that permitted shifting positions at will from sitting, standing, or walking and

>she would need to take unscheduled breaks depending on how she was doing that day. He opined that she could lift less than 10 pounds frequently and 10 pounds occasionally and could use her upper extremities for reaching only 50% of time. Dr. DePaz opined that the claimant was likely to be absent from work three or four times per month as a result of her impairments or treatment.

(Tr. p. 49-50).

Dr. DePaz's August 20, 2020 Residual Functional Capacity Questionnaire findings mirrored the early findings with these exceptions: (1) he limited Plaintiff to walking only one-half of a city block (rather than 1-2 city blocks) without significant pain; (2) he limited Plaintiff to standing/walking for 5-10 minutes (rather than 10 minutes) at one time and for 1-2 hours total (rather than 2 hours) in an eight-hour workday; (3) he found Plaintiff would be absent from work more than four times (rather than 3-4 times) per month as a result of her impairments; and (4) he found she was physically incapable of working an eight-hour day, five days per week on a sustained basis. (Tr. 50).

The ALJ found Dr. DePaz's opinions unpersuasive for these reasons:

>Initially, the undersigned notes that they are inconsistent with each other. For example, his examination records indicate only that he is limiting the claimant to the "sedentary base" base[d] on her subjective complaints. In addition, his second Residual Functional Capacity Questionnaire dated August 2020 states that the limitations apply as of his first visit with the claimant in July 2018; however, this opinion was more restrictive than his first Residual Functional Capacity Questionnaire dated July 2019. Furthermore, these Questionnaires are not supported by his own treatment records, which show negative neuroforaminal compression, normal range of motion of the

>upper and lower extremities, no strength deficits in the upper extremities or left lower extremity, only weakness of the toe flexors in the right lower extremity, and normal deep tendon reflexes except at the ankles. The undersigned finds it significant that Dr. DePaz's treatment records vary little from one visit with the next, which is consistent with the claimant's testimony that Dr. DePaz did not do much other than listen to her reports of how she is doing, punch them in the computer, and write medication refills. These opinions are also not supported by his own statements that the claimant's symptoms and imaging findings were not consistent with a disc related impairment, but rather he attributed them to her facet joints or a soft tissue injury. These opinions are not consistent with the findings of the consultative examiner, Dr. Malik, including full range of motion of all joints of the lower extremities bilaterally, 5/5 strength throughout except for 4+/5 in her right lower extremity, normal reflexes, and an ability to ambulate without the use of an assistive device (Exhibit B23F). They are also inconsistent with her August 2018 EMG/NCS, which was normal with no evidence of acute or chronic radiculopathy or plexopathy affecting the right lower extremity (Exhibit B9F/39-44) and with her most recent MRI of the lumbar spine dated August 2020, which showed disc height loss with annular disc bulge and small disc protrusion with only mild spinal canal stenosis and mild left and moderate right neural foraminal stenosis (Exhibit B24F/3-4), which was found to be no change from 2016, at which time she was still engaging in substantial gainful activity.

(Tr. 50-51).

In the decision, the ALJ noted that Dr. DePaz's first and second Residual Functional Capacity Questionnaires conflicted with each other. (Tr. 50). Plaintiff argues that the ALJ failed to explain why this inconsistency was a reason to find Dr. DePaz's opinions unpersuasive. (Doc. 18, p. 15). Plaintiff also argues that the two forms were completed over a year apart and the differences prove that Plaintiff's condition continued to deteriorate during this interval. (Doc. 18, p. 15).

Even though Plaintiff claims her condition deteriorated over this one-year period, she fails to cite record evidence from Dr. DePaz's treatment records documenting this deterioration. Plus, the ALJ found significant that Dr. DePaz's treatment records varied little. (Tr. 50).

Plaintiff also challenges the ALJ's finding that the August 2020 questionnaire covered the same period of treatment as the July 2019 questionnaire, but contained conflicting restrictions. (Tr. 50). Plaintiff claims the ALJ misread the questionnaires and Dr. DePaz's August 2020 opinion merely states he treated Plaintiff since July 2018. (Doc. 18, p. 15). Not so. On the last page of the August 2020 questionnaire entitled, "Onset Date Questionnaire," Dr. DePaz stated, " I have treated this patient since    7-31-18. It is my opinion that my patient has had the limitations and restrictions outlined in the Residual Functional Capacity Questionnaire since 7-31-18." (Tr. 991). Dr. DePaz failed to explain the additional restrictions in the more recent questionnaire even though it covered much of the same period as the first questionnaire. The ALJ correctly noted the discrepancy.

Ignoring that the ALJ found Dr. DePaz's questionnaire responses unsupported by his own treatment records—*i.e.,* showing negative neuroforaminal compression, normal range of motion in all extremities, no strength deficit in the extremities, only weakness of the toe flexors in the right lower extremity, and normal deep tendon reflexes except at the ankles—Plaintiff focuses on the ALJ's statement that Dr.

DePaz attributed Plaintiff's symptoms and imaging findings to her facet joints or a soft tissue injury and not a disc-related impairment. (Tr. 50; Doc. 18, p. 16). Plaintiff claims the ALJ mischaracterized the evidence and substituted his opinion for that of Dr. DePaz. (Doc. 18, p. 16). But Plaintiff acknowledges that Dr. DePaz diagnosed Plaintiff at times with more generalized and non-disc related impairments such as lumbago or chronic pain. (Doc. 18, p. 17). The ALJ did not mischaracterize the evidence and properly supported his decision.

Plaintiff also challenges the ALJ's finding that Dr. DePaz's opinions conflicted with the findings of consultative examination Aleem Malik, M.D. (Doc. 18, p. 18). Plaintiff claims the ALJ "cherry-picked" the evidence of record in an attempt to discount Dr. DePaz's opinion. (Doc. 18, p. 18). The ALJ considered Dr. Malik's examination and opinion and thoroughly summarized his findings. (Tr. 42). As the ALJ noted, Dr. Malik found full range of motion in all joints of the lower extremities, 5/5 strength throughout except for 4+ strength in the right lower extremity, normal reflexes and an ability to ambulate without an assistive device. (Tr. 50, 995). The ALJ also found Dr. DePaz's opinions inconsistent with objective imaging from August 2018 and a more recent August 2020 MRI. (Tr. 50-51). While Plaintiff points to other evidence of record that supports her argument, the issue is not whether other evidence exists, but whether the ALJ's decision is supported by substantial evidence. In the decision, the ALJ thoroughly considered and

summarized the evidence of record in a lengthy decision and substantial evidence supports the ALJ's decision. (Tr. 31-52). Plaintiff invites the Court to reweigh the evidence, which it cannot do. A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). Even if the evidence preponderates against the Commissioner's decision, the Court must affirm if substantial evidence supports the Commissioner's decision. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021). Here, the ALJ's decision finding Dr. DePaz's opinions unpersuasive is supported by substantial evidence and the ALJ applied the correct legal standard.

### 2. Dr. Murphy's Opinion

When Dr. DePaz retired, Plaintiff switched to Dr. Murphy who completed a Residual Functional Capacity Questionnaire on March 9, 2021. (Tr. 43, 67). The ALJ scrupulously summarized both Dr. Murphy's January 2021 treatment record and the Residual Functional Capacity Questionnaire. (Tr. 43-44). Dr. Murphy's opinion adopted most of the opinions found in Dr. DePaz's August 2020 Residual Functional Capacity Questionnaire. (*Compare* Tr. 1063-64, *with* Tr. 989-91). The ALJ observed that on examination, Dr. Murphy found Plaintiff exhibited poor effort with lumbar spine range of motion, had only mild difficulty raising from a chair, had supple muscles, had functional strength in all four extremities with give-way

weakness to the bilateral lower extremities, and had no acute neurological changes. (Tr. 52). The ALJ found Dr. Murphy's treatment record did not support her opinions, and found her opinion to be inconsistent with Dr. DePaz's examinations, Dr. Malik's findings, an August 2018 imaging, and an August 2020 MRI. (Tr. 51-52).

Plaintiff argues that the ALJ erred in finding Dr. Murphy's opinion unsupported by her one-time examination. (Doc. 18, p. 19). Plaintiff claims that the ALJ focused on Dr. Murphy's single examination and should have recognized that even though Dr. Murphy examined Plaintiff once, she had the benefit of all of Dr. DePaz's records and her opinions were based on both her physical examination of Plaintiff and on a review of the prior records. (Doc. 18, p. 19-20). Contrary to Plaintiff's argument, the language in the decision does not focus on Dr. Murphy examining Plaintiff only one time, but on whether the examination results support Dr. Murphy's opinion. (Tr. 52). The ALJ found they did not and provided substantial reasons why.

Plaintiff also disagrees with the ALJ's finding that Dr. Murphy's opinion conflicts with Dr. DePaz's treatment notes because the ALJ found Dr. DePaz's opinion similarly unpersuasive. (Doc. 18, p. 20). The ALJ simply referred to the same records he used to support his finding that Dr. DePaz's opinions were not supported by his treatment records, such as negative neuroforaminal compression, normal range of motion in the extremities, no strength deficits in the extremities,

only weakness of the toe flexors in the right lower extremity, and normal deep tendon reflexes except at the ankles. (Tr. 52). The ALJ cited many of the same reasons to find the very similar opinions of both Dr. DePaz and Dr. Murphy unpersuasive. For the same reasons the Court found the ALJ's supportability and consistency arguments supported by substantial evidence as to Dr. DePaz's opinion so too does the Court find the ALJ's supportability and consistency arguments supported by substantial evidence as to Dr. Murphy's opinion. Likewise, a court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *See Mitchell*, 771 F.3d at 782. Substantial evidence supports the ALJ's finding that Dr. Murphy's opinion was unpersuasive.

### B. Assistive Device

Plaintiff next contends that the ALJ substituted his opinion for that of Plaintiff's medical sources in finding an assistive device – a walker – was not medically necessary. (Doc. 18, p. 22). Plaintiff argues her walker was prescribed by Richard G. Valenzuela, M.D. who found in May 2018 that Plaintiff had tenderness of the transverse process bilaterally at L4, tenderness of the SI joint, reduced and painful rotation, extension, and lateral flexion of the lumbar spine. (Doc. 18, p. 22). Plaintiff further claims that the prescription for a walker aligned with treatment notes from Dr. DePaz who observed Plaintiff having significant difficulty with mobility, using a walker for treatment visits, having significant back pain radiating to the right

lower extremities, and having trouble getting on and off the exam table. (Doc. 18, p. 23).

For a hand-held assistive device to be found medically necessary, medical documentation must "establish[] the need for a hand-held assistive device to aid in walking or standing, and describ[e] the circumstances for which it is needed (i.e., all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185, *7 (1996). When the record establishes a plaintiff needs a hand-held assistive device, the ALJ "must always consider the particular facts of a case" and determine the circumstances under which it is required. *Id*.

Throughout the decision, the ALJ discussed the need for a walker. (Tr. 27, 28, 31-36, 39-40, 42-44, 46-47). In considering whether Plaintiff met or equaled a listing, the ALJ considered Plaintiff's need for a walker. (Tr. 27-28). The ALJ acknowledged that in May 2018, Dr. Valenzuela prescribed a walker with a seat for Plaintiff's lumbar disc herniation. (Tr. 28, 46). The ALJ questioned the prescription based on Dr. Valenzuela's treatment records showing Plaintiff had normal strength and sensation in her lower extremities, normal gait with no limp, and ambulation without an assistive device. (Tr. 28). The ALJ noted the records from June and July 2018 showed a normal gait and ambulation without an assistive device, and in July 2018, Plaintiff denied any falls in the last three months. (Tr. 28). The ALJ also

acknowledged that on a July 2018 visit to Dr. DePaz, Plaintiff was observed having significant difficulty with ambulation and was using a rolling walking, and later records also reflected Plaintiff had significant difficulty with ambulation and ambulated with a rolling walker. (Tr. 28). But the ALJ found it significant that some of these visits occurred on the same day as a visit to Rigoberto Puente Guzman, M.D. at a pain management clinic, and at these visits, Dr. Guzman observed Plaintiff had normal gait and station and ambulated without an assistive device. (Tr. 28). The ALJ also noted that consultative examiner Dr. Malik concluded that even though Plaintiff presented with a rolling walker, she could walk without it and found it not medically necessary. (Tr. 28, 995). The ALJ considered the times Plaintiff appeared to need a walker and the times when she did not. He determined that the medical evidence did not support a finding of a documented medical need for an assistive device. (Tr. 46-47). Based on this comprehensive review of the record and consistent with Dr. Malik's opinion, the ALJ found a walker not to be medically necessary to aid in walking or standing. And once again, a court cannot reweigh the evidence or decide the facts anew. *See Mitchell*, 771 F.3d at 782. Substantial evidence supports the ALJ's decision about the use of a hand-held assistive device.

### III. Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied

the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

      **DONE** and **ORDERED** in Fort Myers, Florida on May 2, 2023.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties